UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES GAINFORTH,

      Petitioner,

v.                                                                                    Case No. 2:10-cv-87
                                                            HON. GORDON J. QUIST

CATHERINE BAUMAN,

      Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner James Gainforth filed this petition for writ of habeas corpus challenging his prison sentence of life imprisonment for first-degree premeditated murder (MCL 750.316) and 40 to 60 years imprisonment for armed robbery (MCL 750.529). On June 30, 2010, I issued a Report and Recommendation to dismiss this action. Petitioner filed objections to the Report and Recommendation on September 2, 2010. Judge Quist rejected that recommendation and remanded the matter to the undersigned for further consideration of Petitioner's arguments that new exculpatory evidence tolled the statute of limitations and for consideration of Petitioner's claim of actual innocence. Respondent has now filed a Motion For Summary Judgment and Dismissal. The parties have briefed the issues and the matter is now ready for decision.

      Petitioner raises the following claims:

      I.   The prosecution presented false and misleading scientific testimony at trial that the defendant's rifle could be the murder weapon.

      II.  Ineffective assistance of trial counsel; failure to investigate and present defense that defendant was medically incapable of crime.

      III.  Ineffective assistance of appellate counsel; failure to raise issues and instead argued that appeal was wholly without merit.

Petitioner's application is barred by the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which was enacted on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, PUB. L. NO. 104-132, 110 STAT. 1214 ("AEDPA"). The one-year statute of limitations provided in § 2244(d)(1) is new, as there previously was no defined period of limitation for habeas actions.[1]  Section 2244(d)(1) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

In this case, § 2244(d)(1)(A) provides the period of limitation. The other subsections do not apply to the grounds that Petitioner has raised. Under § 2244(d)(1)(A), the one-year limitation period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." According to paragraph nine of

---

[1] Previously, the only time limit was provided in Rule 9 of the Rules Governing § 2254 Cases, which allows dismissal of a petition only under circumstances where the state has been prejudiced by the delay in filing.

2

Petitioner's application, Petitioner appealed his conviction to the Michigan Court of Appeals and the Michigan Supreme Court. The Michigan Supreme Court denied his application on January 20, 1988. Petitioner did not petition for certiorari to the United States Supreme Court, though the ninety-day period in which he could have sought review in the United States Supreme Court is counted under § 2244(d)(1)(A). *See Isham v. Randle*, 226 F.3d 691, 695 (6th Cir. 2000), *cert. denied*, 121 S. Ct. 1211 (2001); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).

Because enactment of the statute could extinguish otherwise viable claims, the Sixth Circuit has held that there is a one-year grace period from enactment of the statute on April 24, 1996. *Austin v. Mitchell*, 200 F.3d 391, 393 (6th Cir. 1999), *cert. denied*, 530 U.S. 1210 (2000). The grace period ends on April 24, 1997. *Bronaugh*, 235 F.3d at 284-85. Petitioner had one year from April 24, 1996, to file his habeas application. Petitioner filed on April 30, 2010. As a result, absent tolling, the limitations period had expired.

Petitioner was convicted of first-degree premeditated murder and armed robbery following a jury trial in March of 1985. In June of 1985, Petitioner filed a claim of appeal with the Michigan Court of Appeals. In May of 1986, Petitioner's appellate counsel, who also served as his trial counsel, filed a motion to withdraw the appeal on the ground that it was wholly frivolous. In a letter dated May 25, 1986, Petitioner filed a pro se answer, requesting that the motion to withdraw be granted but that his conviction not be affirmed. On March 16, 1987, the Michigan Court of Appeals granted the order and upheld the conviction. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court. On January 20, 1988, the Michigan Supreme Court denied Petitioner's application.

On August 12, 2004, Petitioner filed a motion for relief from judgment with the trial court. In January of 2006, the trial court issued orders appointing an opthamology expert and a firearms expert to appear at an evidentiary hearing that was subsequently held on December 19 and 20, 2006. The trial court granted Petitioner's motion for relief from judgment on December 20, 2006, and denied the prosecutor's motion for reconsideration on January 8, 2007.

On January 25, 2007, the prosecutor filed an application for leave to appeal the trial court's grant. The Michigan Court of Appeals granted the prosecutor's leave on March 29, 2007. The Court subsequently reversed the trial court's grant of a new trial. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, which was denied on June 23, 2009.

Petitioner filed a petition for writ of habeas corpus with this Court on April 30, 2010. Petitioner claims that new ballistics evidence discovered in May of 2006 should initiate a new one-year clock. Petitioner claims he is entitled to equitable tolling because the issues in his petition raise colorable claims of actual innocence.

The one-year limitation period applicable to § 2254 is a statute of limitations subject to equitable tolling. *See Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009); *Keenan v. Bagley*, 400 F.3d 417, 420 (6th Cir. 2005). A petitioner bears the burden of showing that he is entitled to equitable tolling. *See Keenan*, 400 F.3d at 410; *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). The Sixth Circuit has repeatedly cautioned that equitable tolling should be applied "sparingly" by this Court. *See Sherwood v. Prelesnik*, 579 F.3d 581, 588 (6th Cir. 2009); *Jurado v. Burt,* 337 F.3d 638, 642 (6th Cir. 2003); *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir. 2002). A petitioner seeking equitable tolling of the habeas statute of limitations has the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood

in his way." *Lawrence v. Florida*, 549 U.S. 327 (2007) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Akrawi*, 572 F.3d at 260.

Petitioner generally claims that he is actually innocent of the offenses for which he was convicted. The Sixth Circuit has held that a habeas petitioner who demonstrates a credible claim of actual innocence based on new evidence may, in exceptional circumstances, be entitled to equitable tolling of habeas limitations. *See McCray v. Vasbinder,* 499 F.3d 568, 577 (6th Cir. 2007); *Souter v. Jones*, 395 F.3d 577, 597-98 (6th Cir. 2005). Petitioner, however, fails to meet the standard for proving a claim of actual innocence. To support a claim of actual innocence, a petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. *Shlup v. Delo*, 513 U.S. 298, 327 (1995); *Souter*, 395 F.3d at 590, 598-99; *Allen*, 366 F.3d at 405. A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence--that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Furthermore, actual innocence means "factual innocence, not mere legal insufficiency." *Souter*, 395 F.3d at 590 (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998). A petitioner "must produce evidence of innocence so strong that the court can not have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Allen*, 366 F.3d at 405 (internal quotations and citations omitted).

Petitioner asserts that new ballistics test results obtained on May 11, 2006, have proved that Petitioner's rifle is not the murder weapon. Petitioner argues that the new test results establish a factual predicate which initiates a new one year clock. However, in the opinion of the

undersigned, factual predicate for Petitioner's claim that the prosecution presented false and misleading scientific testimony at trial could have been discovered earlier with the exercise of due diligence. At trial, Petitioner's expert witness, Thomas Mitchell, testified that the bullet and the three cartridges in evidence were not fired by Petitioner's rifle. Docket #16, pages 528-530. During the 2006 evidentiary hearing, Petitioner's new ballistics expert, David Ballash, stated that he disagreed with the prosecutor's trial expert who testified that changing parts of the rifle, superglue from a latent print examination, and cleaning were all possible explanations for why he was unable to rule out Petitioner's rifle as the murder weapon. Petitioner's new expert witness testified that superglue could not have affected the barrel of the rifle. Petitioner's new expert witness also testified that

> "if a bullet has heavy course marks on it and rifling in the weapon itself is fine striated markings then the normal person would have a great deal of difficulty obtaining the tools to cause those heavy marks that would have been on the bullet to be removed...this photograph [of the bullet] for me falls into that category, that this is something that I would find impossible to remove in a normal, even vigorous, cleaning."

Docket #21, pages 87-88.

David Ballash came to the same conclusion that Thomas Mitchell did: that in his expert opinion, Petitioner's rifle could not have been the murder weapon. Ballash's testimony is not new factual predicate that was previously unknown to Petitioner. After the new evidentiary hearing, the trial court wrote:

> Secondly, he claims the firearms expert that the State had testify at the trial was wrong in failing to exclude this firearm as this rifle, as the one that fired the–that committed the murder. And, that's the second thing. That one I'm not going to spend much time on directly because the firearm expert for the State was well cross-examined by the defense lawyer. The weaknesses in that expert's analysis was

6

> fully explored for the jury. And, the defendant had their own expert firearm witness too who did testify that the bullet that was recovered from the scene could not have come from this rifle, the rifle that the two co-defendants, or pardon me, two accomplices, the two witnesses against Mr. Gainforth had said was the rifle he had used to commit the murder. So that by itself is not a separate grounds of appeal. . . ."

(Docket # 22, pages 197-198).

Petitioner's contention that this habeas claim has merit does not state a claim of actual innocence. Moreover, he has presented no new reliable evidence in support of such a claim. Furthermore, the evidence offered by Petitioner is not exculpatory. The Michigan Court of Appeals found that the evidence offered at the 2006 hearing was merely contradictory opinion. The Court wrote:

> Defendant's only evidence that Lieutenant Arrowood presented false testimony is the contradictory opinion of firearms expert David Balash, who testified at the evidentiary hearing. To prove falsity of a statement in a perjury case, there must be "evidence of circumstances bringing strong corroboration of the contradiction." *People v Cash,* 388 Mich 153, 162; 200 NW2d 83 (1972). Simple contradiction is insufficient. *People v Kozyra,* 219 Mich App 422, 429; 556 NW2d 512 (1996). Balash's testimony only establishes contradiction. Defendant did not show that Balash's opinion represented irrefutable scientific fact. Thus, his opinion was insufficient to establish that Lieutenant Arrowood purposefully testified falsely.

Docket #25, page 5. Accordingly, Petitioner is not entitled to equitable tolling of the statute of limitations.

Petitioner also claims that new medical evidence offered at the 2006 evidentiary hearing proves his claim of actual innocence. At the hearing, Petitioner's mother and father testified about Petitioner's military medical records, suggesting that because of his eyesight he was incapable of committing the murder. However, Petitioner's father testified at the hearing that Petitioner's trial

7

counsel did have access to these records:

> [DEFENSE COUNSEL]: . . .Do you recall in any of these meetings talking about the army medical records?
>
> [PETITIONER'S FATHER]: Yes, that came up. And, I believe my wife handed him the records because he did mention it and his indication was he didn't think it was worthwhile monkeying with.
>
> [DEFENSE COUNSEL]: Do you remember when in the process he had those records? Was it early on? If you remember, I know it's a long time ago.
>
> [PETITIONER'S FATHER]: Yeah. I don't remember how long it was from the time he was assigned, I don't know. It was when he first started working the case.
>
> * * *
>
> [DEFENSE COUNSEL]: Did you ever give any documents to Mr. Haley [Petitioner's trial counsel]?
>
> [PETITIONER'S MOTHER]: I took the military records to him, yes.
>
> * * *
>
> [DEFENSE COUNSEL]: Okay. Why did you think they were important? You said you thought they were important.
>
> [PETITIONER'S MOTHER]: Because I had read them thoroughly after he came home from the military so I knew what was in them, they said he couldn't sight the rifle. . .this is something his attorney should have.

Docket #21, pages 113-115, 119-120.

Additionally, the Michigan Court of Appeals wrote in their opinion reversing the trial court's decision to grant Petitioner a new trial:

> The evidence at the evidentiary hearing established that defendant had a vision defect at the time of the offense. His central vision was not

8

clear. Whether there was a reasonable probability that the jury would have acquitted the defendant had it been presented with evidence of his vision defect depends on the strength of the evidence supporting defendant's claim that he could not have accurately aimed the rifle to shoot Burton because of this vision defect. The evidence of defendant's vision defect only calls into question the accomplice's credibility and tends to highlight weaknesses in the prosecution's case if it supports defendant's contention that he was physically incapable of firing the fatal shot.

Defendant's army records do not definitively support such a conclusion. Defendant's army records did not specify at what distance defendant failed to qualify with his weapon. Defendant told a police officer when he was arrested that he could not qualify at 300 meters. Defendant's accomplice, Hutchinson, who was in the army at the same time as defendant, stated that he shot at distance of 100 to 300 yards. The shooter fired at Burton from, at most, 150 feet. Assuming that 100 yards is the minimum distance needed to qualify with one's weapon in the army, such a distance is twice the maximum distance from which the fatal shot was fired–a significant difference.

Dr. Musson's testimony also did not support defendant's claim that he was physically incapable of firing the fatal shot. Dr. Musson estimated that defendant's vision improved to its current level, near normal, in at most one year from the date of his army discharge, which was months before the shooting. Even assuming defendant's vision at the time of the offense was the same as last noted in his army medical records, 20/50 in both eyes, based on Dr. Musson's testimony, defendant could read a 5.625-inch-high letter at 150 feet. Dr. Musson testified that because defendant's defect was relative, he could not discern a specific letter in the center of his vision, but he could detect that a letter was there. He stated that less visual acuity was needed to discern an object than to discern a letter at a distance. Burton, an adult male object, was shot in the back on the left side adjacent to his shoulder blade. Although defendant's defect may have prevented him from placing the rifle sight in the center of Burton's back or on a letter displayed on Burton's back, there is no evidence that it prohibited him from sufficiently seeing Burton and sighting in on his back. While Burton's back through the sight may not have been crystal clear, Dr. Musson's testimony indicates the defendant could see that an object was in the sight.

Docket #25, pages 4-5.

9

Petitioner has offered no new reliable evidence to support his claim of actual innocence. Nor is the evidence offered by Petitioner exculpatory. Accordingly, Petitioner is not entitled to equitable tolling of the statute of limitations.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court grant Respondent's Motion For Summary Judgment and Dismissal (Docket #10) and dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

The undersigned recommends that the court deny Petitioner's application on procedural grounds of the statute of limitations. Under *Slack*, 529 U.S. at 484, when a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it

debatable whether the district court was correct in its procedural ruling." Both showings must be made to warrant the grant of a certificate. *Id.* The undersigned concludes that reasonable jurists could not debate that each of Petitioner's claims are properly dismissed on the procedural grounds of the statute of limitations. Petitioner has offered no new reliable evidence to support his claim of actual innocence. Nor was the evidence presented by Petitioner at the 2006 hearing exculpatory. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

                                                 /s/ Timothy P. Greeley  
                                                 TIMOTHY P. GREELEY  
                                                 UNITED STATES MAGISTRATE JUDGE

Dated:  August 11, 2011